## APPEAL OF PACIFIC COAST REDWOOD CO.

Docket No. 1847. Decided November 10, 1926.

1. Taxes and other expenses paid in carrying property over a period of years may not be capitalized and added to the cost.

2. The realization of the appreciation in value of property existing on March 1, 1913, over the cost thereof by sale in 1920 is a current earning and as such can not be included in invested capital for that year.

3. *Held*, the sale of property was on the installment basis.

*Charles A. Strong, Esq., A. DeWitt Alexander, C. P. A.,* and *A. Porter Robinson, C. P. A.,* for the petitioner.

*John D. Foley, Esq.,* for the Commissioner.

This appeal is from the determination of a deficiency in income and profits taxes for 1920 in the amount of $21,413.18. Three questions are involved: (1) Whether taxes and business expenses paid over a period of years should be treated as carrying charges of property and added to the cost thereof for the purpose of determining gain or loss on the sale of the property; (2) whether the difference between the cost and the March 1, 1913, value of property, when the property is sold on May 15, 1920, may be included in invested capital of the corporation prior to the beginning of the next taxable year; (3) whether the gain derived from the sale of property in 1920 should be reported on the installment basis.

The appeal was heard upon the petition, answer, and a stipulation filed by the parties.

### FINDINGS OF FACT.

The taxpayer is a corporation organized and existing under the laws of California, with its principal office in San Francisco.

On March 1, 1913, it owned lands and timber which had cost it prior to that date $564,215.06. On March 1, 1913, this property was worth $2,300,000.

Subsequent to March 1, 1913, and prior to May 15, 1920, the taxpayer had the following transactions with respect to its property:

(a) It purchased additional timber land for $1,900.

(b) It incurred and paid certain direct expenses on its property, which were allowed by the Commissioner in the amount of $789.05, as an addition to cost of the property.

(c) It sold 47 acres of land for $3,475.

(d) It sold certain fallen timber for $3,643.96.

It was stipulated that items (c) and (d) above should be credited to the cost of the property.

The entire property of the taxpayer was sold on May 15, 1920, for $2,500,000. The expenses incurred in connection with the sale were $80,000 for commission and $20,000 for legal expenses, leaving a net realization of $2,400,000.

The Commissioner ascertained the gain on the sale of the property in the following manner:

| | | |
|---|---|---|
| Net proceeds of sale | | $2,400,000.00 |
| Less: | | |
| Value of property at March 1, 1913 | $2,300,000.00 | |
| The cost of purchases since | 1,900.00 | |
| The expenses allowed | 789.05 | |
| | 2,302,689.05 | |
| Less: | | |
| Sales of land | $3,475.00 | |
| Sales of timber | 3,643.96 | |
| | 7,118.96 | |
| | | 2,295,570.09 |
| Gain on sale of property | | 104,429.91 |

The taxpayer ascertained the gain on the sale of the property in the following manner:

| | | |
|---|---|---|
| As ascertained by the Commissioner | | $104,429.91 |
| Less: | | |
| Expenditures for taxes and other charges from 1913 up to date of sale on May 15, 1920 | $86,114.10 | |
| Less: | | |
| Allowed by the Commissioner as part of cost of property | 789.05 | |
| | 85,325.05 | |
| Gain on sale admitted and originally returned by taxpayer | | 19,104.86 |

The 1920 taxes and expenses in connection with the property, designated by the taxpayer as "carrying charges," were allowed by the Commissioner as deductible expense for 1920.

The taxes and expense in connection with the property for 1919 were considered in the same manner by the Commissioner. Such amounts, however, were allowed by the Commissioner as a deduction from the net income of 1920 under the net loss provision of the statute.

The amount of taxes and expenses in connection with holding and carrying the property from March 1, 1913, up to the end of 1918, in the amount of $64,241.87, is the only question now in dispute with respect to the carrying charges on the property, taxpayer having received the benefit of deductions in 1920 for the taxes and expenses for 1919 and 1920.

This amount is made up as follows:

Payments:

Taxes_____ $63, 241. 28
  Salaries, office and general expense_____ 5, 014. 25
  Legal expense _____ 2, 083. 39
  Interest paid _____ 433. 28

                                                                          70, 772. 20
Receipts: Rental of land_____ 6. 530. 33

                                                                        64, 241. 87

The paid-in capital stock of the corporation on January 1, 1920, was $694,600, which represented the amount of actual cash paid in to the corporation for stock or shares. The property owned by the corporation increased in value during the period between the time of its purchase and March 1, 1913, to $2,300,000. If the expenses for taxes and other charges, designated as carrying charges by the tax-payer, be added to the cost of the property, the cost of the property at March 1, 1913, was $630,376.35. If such expenditures be not added to the cost of the property, the cost up to March 1, 1913, was $554,215.06.

The taxpayer entered into an agreement to sell the property, as stated above, for the consideration of $2,500,000. Six hundred thousand dollars was paid in cash on May 15, 1920, on the execution of the contract, and deferred payments were made as follows:

1920—Oct. 11_____ $1, 264. 98
     Dec. 13_____ 2, 853. 60

       Total, year 1920_____ $604, 118. 58
1921—Feb. 17_____ 5, 059. 54
     Apr. 14_____ 14, 215. 39
     May 16_____ 300, 000. 00
     June 16_____ 200, 000. 00
     June 19_____ 33, 249. 66
     Oct. 12_____ 43, 793. 48
     Nov. 10_____ 39, 066. 89
     Dec. 20_____ 42, 380. 08

       Total, year 1921_____ 677, 764. 99
1922—Feb. 28_____ 16, 784. 41
     Apr. 14_____ 8, 554. 31
     May 15_____ 500, 000. 00
     June 15_____ 45, 149. 83
     Aug. 1_____ 39, 906. 45
     Oct. 6_____ 51, 930. 80
     Dec. 6_____ 42, 801. 33

       Total, year 1922_____ 705, 127. 13

1923—Feb. 23_____ $18, 034. 94
       Apr. 2_____ 29, 836. 27
       May 15_____ 465, 118. 09

       Total, year 1923_____ $512, 989. 30

       Total payments under contract_____ 2, 500, 000. 00

The pertinent parts of the contract are as follows:

THIS AGREEMENT made and entered into this 15th day of May, 1920, by and between PACIFIC COAST REDWOOD COMPANY, a corporation under the laws of the State of California, hereinafter called the seller, and ALBION LUMBER COMPANY, likewise a corporation under the laws of the State of California, hereinafter called the buyer,

WITNESSETH:

That the seller agrees to sell, and the buyer agrees to buy, for the price, and upon the terms hereinafter mentioned, all of the right, title and interest of the seller in and to all those certain lots, pieces or parcels of land situate, lying and being in the County of Mendocine, State of California, more particularly described as follows, to wit:

The buyer agrees to pay to the seller for the seller's interest in the above described property the sum of Two Million Five Hundred thousand ($2,500,-000.00) Dollars, as follows:

Six hundred thousand ($600,000.00) Dollars upon the execution and delivery of this instrument, the receipt whereof is hereby acknowledged; the balance of said purchase price, together with interest on the deferred payments at the rate of six per cent (6%) per annum from the date hereof shall be paid in the following manner:

On the 15th day of August, 1920, and each sixty days thereafter until said purchase price is fully paid, the buyer shall pay to the seller, a sum equal to five dollars ($5.00) per thousand feet, log scale, for each one thousand feet of timber removed by the buyer from said premises during the two months next preceding one month before said days of payment; for example on August 15, 1920, the buyer shall pay for all timber removed between May 15, 1920, and July 15, 1920.

On the 15th day of May 1921, the said buyer shall pay an additional sum of Five Hundred thousand ($500,000.00) Dollars.

On the 15th day of May 1922, the buyer shall pay further sum of Five hundred thousand ($500,000.00) Dollars.

On the 15th day of May 1923, the buyer shall pay to the seller, the balance then remaining unpaid on said purchase price. Provided, however, that whenever the buyer shall have completed the payment of the full purchase price and interest on deferred payments, no further payments on account of said purchase price need be made.

All deferred payments shall bear interest at the rate of six per cent (6%) per annum from the date of this instrument, which said interest shall be payable semi-annually commencing on the 15th day of November, 1920.

It is also agreed between the buyer and seller, as follows:

The buyer, so long as it shall not be in default hereunder, shall be entitled to the possession of said lands and premises, and the rentals for such portions thereof as are under lease accruing after the date of this instrument, shall belong to the buyer. * * *

The quantity of timber removed during any one year, and for which payments are to be made on the purchase price as hereinafter provided, shall be determined by a scaler to be agreed upon by the parties hereto. In the event of a failure of the parties hereto to agree upon such scaler, he shall be selected by Mr. C. R. Johnson or his successor in office as President of Union Lumber Company. The expense of making such scale shall be borne and paid by the buyer. Until said purchase price is fully paid, the seller shall have the right to examine the books of account of the buyer wherein are kept the logging and lumber records for the purpose of checking the quantity of timber and bark cut or removed from the above described premises.

The contract also provided as follows:

Time is of the essence hereof, and the due performance of all covenants and agreements on the part of the buyer is a condition precedent, whereupon depends the performance of the agreements on the part of the seller. In the event of a failure of the buyer to comply with the covenants and agreements, or any thereof, on its part entered into, the seller shall be released from all obligations in law or in equity to transfer and convey said property, or any part thereof, and the buyer shall surrender possession thereof to the seller free and clear of any and all liens or encumbrances suffered or permitted by the buyer, and shall forfeit all rights under said agreement, and all rights to any and all moneys which it shall theretofore have paid hereunder, as liquidated damages for such default, and not as a penalty.

Upon full payment of the said purchase price, the seller shall make, execute and deliver to the buyer, a deed of said lands and premises sufficient in form and substance to vest in the buyer, all the right, title and interest of the seller in and to said lands, premises and property hereinabove described.

This agreement shall not be assigned by the buyer nor shall the buyer's rights hereunder be transferred without the previous written consent of the seller.

### OPINION.

TRAMMELL: The statute allows, as a deduction from gross income in determining net taxable income, business expenses and taxes. The statute does not leave the question open to taxpayers to consider such expenditures capital items. The statute provides that such payments shall be allowed as deductions from gross income in determining net income. They can not be added to the cost of the property as capital expenditures in determining gain or loss on the sale thereof. *Westerfield* v. *Rafferty*, 4 Fed. (2d) 590.

The second question is whether the increase in value of property existing on March 1, 1913, over the cost when such appreciation in value is realized by sale of the property in 1920, may be included in invested capital for 1920. That such appreciation in value existing on March 1, 1913, is not taxable when realized subsequently, is well settled. It is only the gains or profits arising or accruing since March 1, 1913, that are subject to the tax. This is conceded by both the Commissioner and taxpayer, but the taxpayer contends that, notwithstanding the fact that unearned increment existing on March 1, 1913, is not subject to tax, when it is realized by sale of the

property in 1920 it should be included in invested capital from the date of realization.

Section 326 of the Revenue Act of 1918 provides that the term "invested capital" means:

(1) Actual cash bona fide paid in for stock or shares;

(2) Actual cash value of tangible property, other than cash, bona fide paid in for stock or shares, at the time of such payment, but in no case to exceed the par value of the original stock or shares specifically issued therefor, unless the actual cash value of such tangible property at the time paid in is shown to the satisfaction of the Commissioner to have been clearly and substantially in excess of such par value, in which case such excess shall be treated as paid-in surplus: * * *

(3) Paid-in or earned surplus and undivided profits; not including surplus and undivided profits earned during the year * * *.

It is claimed by the Commissioner that if the realization of the appreciation of the value of property existing on March 1, 1913, is to be included in invested capital at all, it can only be included under section 326 (a) (3) which provides for a paid-in or earned surplus. Clauses (1) and (2) of section 326 refer to actual contributions of cash or of tangible property in exchange for stock or shares. The realization during the taxable year by sale of the increase in value which existed on March 1, 1913, clearly does not come under clauses (1) or (2). It is equally clear that it is not a paid-in surplus. That phrase contemplates an actual contribution to the capital of the corporation by a stockholder in money or its equivalent resulting in an excess capital contribution over and above the par value of the stock. Earned surplus or undivided profits must come to the taxpayer in the form of income. An earned surplus is an accumulation of gains and profits. The gain or profit from the sale of the property having been realized during 1920 was surplus or undivided profits of that taxable year and as such can not be included in invested capital for that year under the express language of section 326 (a) (3).

With respect to the contract to sell the real property, the buyer agreed to pay $2,500,000 to the taxpayer. Six hundred thousand dollars was paid on the execution of the contract and the balance was to be paid in installments within a period of three years. The contract had the usual provisions reserving the title in the seller until all payments were made, gave the seller the right of repossession in case of failure to make payments, and provided for forfeiture of all rights and all money paid as liquidated damages in case of default. The buyer had the right of possession and the right to remove timber. He could not assign the contract without the written consent of the seller. There were no notes, mortgages, or other securities given by the buyer other than the provisions of

the contract. Payments subsequent to the initial payment of $600,000 were made as set out in the findings of fact.

Section 212 (d) of the Revenue Act of 1926 is as follows:

(d) Under regulations prescribed by the Commissioner with the approval of the Secretary, a person who regularly sells or otherwise disposes of personal property on the installment plan may return as income therefrom in any taxable year that proportion of the installment payments actually received in that year which the total profit realized or to be realized when the payment is completed, bears to the total contract price. In the case (1) of a casual sale or other casual disposition of personal property for a price exceeding $1,000, or (2) of a sale or other disposition of real property, if in either case the initial payments do not exceed one-fourth of the purchase price, the income may, under regulations prescribed by the Commissioner with the approval of the Secretary, be returned on the basis and in the manner above prescribed in this subdivision. As used in this subdivision the term "initial payments" means the payments received in cash or property other than evidences of indebtedness of the purchaser during the taxable period in which the sale or other disposition is made.

Section 1208 of the Revenue Act of 1926 makes the above section retroactive to the Revenue Act of 1918, under the provisions of which the tax liability of the taxpayer must be determined.

The initial payment is less than one-fourth of the purchase price and the balance of the purchase price was to be paid in installments. The transaction, therefore, comes within the purview of the above-quoted section of the statute. The proportionate part of the profit to be reported in 1920 is $\frac{604,118.58}{2,500,000.00}$ of $104,429.97.

*Judgment will be entered on 15 days' notice, under Rule 50.*